**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **JUAN CARLOS LOPEZ GONZALEZ,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-26-2050-G** |
| | ) | |
| **FRED FIGUEROA, et al.,** | ) | |
| | ) | |
| **Respondents.** | ) | |

# REPORT AND RECOMMENDATION

Petitioner Juan Carlos Lopez Gonzalez, a noncitizen[1] and Nicaraguan national proceeding pro se, filed a Petition for Writ of Habeas Corpus ("Petition"), Doc. 1, challenging under 28 U.S.C. § 2241 his detention by U.S. Immigration and Customs Enforcement ("ICE"). United States District Judge Charles B. Goodwin referred this matter to the undersigned Magistrate Judge in accordance with 28 U.S.C. § 636(b)(1)(B)-(C). Doc. 5. The undersigned set an expedited briefing schedule, Doc. 6, and the Petition is at issue. On August 7, 2026, Petitioner also filed an Application for an Order to Show Cause. Doc. 2. For the reasons below, the undersigned recommends the Court grant the Petition, Doc. 1, in part and order Respondents to provide Petitioner a bond hearing within seven days or otherwise to release him if there is no hearing within that time. Adoption of this recommendation would moot Petitioner's pending Application for an Order to Show Cause.

---

[1] Unless quoting, this Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

## I. Background

Petitioner, a citizen of Nicaragua, was lawfully inspected and paroled into the United States by Customs and Border Protection on November 29, 2023, under the Nicaraguan Humanitarian Parole Program. Pet. at 15; Doc. 1-2 at 7 (Petitioner's I-94 Admission Record). His parole was authorized through June 12, 2025. Pet. at 15; Doc. 1-2 at 7. On September 15, 2024, Petitioner was arrested in Abilene, Texas for possession of a controlled substance (methamphetamine). Pet. at 16; Resp. at 2; Doc. 1-3 at 2 (ICE's Encounter Summary); Doc. 8-2 at 2 (ICE Officer O'Hara's Declaration). On the same day, ICE placed an Immigration Detainer on him. Pet. at 16; Doc. 1-4 at 2 (ICE's Immigration Detainer). Petitioner pleaded guilty to a felony and was sentenced to 180 days' confinement on May 2, 2025. Doc. 8-2 at 2. On May 5, 2025, he was released from Texas state custody and transferred to ICE custody. Pet. at 16; Doc. 1-3 at 2.

On May 16, 2025, ICE placed Petitioner into removal proceedings before the Immigration Court under 8 U.S.C. § 1229a through the issuance of a Notice to Appear, and charged him with being inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I) as someone who lacked valid entry documents. Pet. at 16; Doc. 1-5 at 2 (Notice to Appear). Petitioner later filed an application for asylum. Doc. 1-7 at 6 (Petitioner's Declaration).

Respondents contend Petitioner is detained under 8 U.S.C. § 1226(c) and subject to mandatory detention. Resp. at 3-4. Petitioner alleges he has been detained in ICE custody for more than 15 months at the time he filed his Petition. Pet. at 17. He also alleges his health conditions have been exacerbated by his detention. Doc. 1-7 at 10-11.

On September 16, 2025, an IJ ordered Petitioner removed. Pet. at 16; Doc. 8-6 at 1, 3 (IJ Removal Order); *see* EOIR, Automated Case Information, *at* https://acis.eoir.justice.gov/en/ (last visited Nov. 12, 2026). On September 26, 2025, Petitioner appealed the removal order to the Board of Immigration Appeals ("BIA"), and the appeal is pending. Pet. at 16; Doc. 1-6 at 2; *see* EOIR, Automated Case Information, *at* https://acis.eoir.justice.gov/en/ (last visited Nov. 12, 2026). Therefore, the removal order is not yet final under 8 C.F.R. § 1241.1.

When Petitioner filed his Petition, he was detained at Diamondback Correctional Facility in Watonga, Oklahoma. Pet. at 1. He remains detained there. *See* ICE Online Detainee Locator System, *at* https://locator.ice.gov/odls/#/results (last visited Nov. 12, 2026).

## II. <u>Petitioner's Claims</u>

Petitioner asserts four counts in his Petition.

- **Count I: Violation of the Immigration and Nationality Act ("INA").** Petitioner alleges his continued detention under 8 U.S.C. § 1225(b)(2) is unlawful and violates the INA because he was lawfully paroled into the United States and lived in the interior for ten months before ICE re-detained him. Pet. at 7, 17-18.

- **Count II: Violation of Procedural Due Process**. Petitioner alleges his re-detention without notice or opportunity to respond and without identifying any changed circumstances justifying re-detention violates his procedural due process rights. *Id.* at 7, 19-20.

- **Count III: Violation of Substantive Due Process**. Petitioner alleges his continued detention without an individualized bond hearing to determine whether he is a danger to the community or a flight risk during his 15 months of immigration detention violates his substantive due process rights. *Id.* at 7-8, 20-21.

- **Count IV: Violation of ICE Regulations**. Petitioner alleges his re-detention and parole termination was unlawful because ICE violated 8 C.F.R. § 212.5(e). Pet. at 8, 18.

He asks the Court to order "his immediate release under reasonable conditions of supervision" or to "order Respondents to provide him with an individualized custody hearing within five (5) days." *Id.* at 8.

## III. Standard of Review

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

## IV. Analysis

### A. Section 1226(c) applies to Petitioner's detention.

The two sections of the INA at issue that govern detention of noncitizens pending removal proceedings are 8 U.S.C. §§ 1225 and 1226. This case involves application of § 1226. Relevant here, § 1226(a) authorizes detention of a noncitizen pending removal proceedings and entitles the noncitizen to a bond hearing. *See Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention.") (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). However, § 1226(c) authorizes mandatory detention pending entry of a final removal order for certain criminal noncitizens.

Petitioner alleges his detention under § 1225(b)(2)(A) violates the INA because he is properly detained under § 1226(a) and entitled to a bond hearing. Pet. at 7, 17-18. Respondents contend Petitioner is properly detained under § 1226(c). Resp. at 3-4. Specifically, Respondents allege Petitioner is subject to mandatory detention under § 1226(c)(1)(B) because he "plead guilty to—and was convicted of—felony possession of a controlled substance under Texas state law." Resp. at 4.

"The Attorney General shall take into custody any alien who . . . is deportable under section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title." 8 U.S.C. § 1226(c)(1)(B). Section 1227(a)(2)(B)(i) provides that noncitizens convicted of a violation of any law or regulation of a State relating to a "controlled substance (as defined in section 802 of title 21)" is deportable. *Id.* § 1227(a)(2)(B)(i). Methamphetamine is a controlled substance. *See* 21 U.S.C. § 802(6) (defining "controlled substance" as a drug listed in the drug schedules); *id.* § 812(b) (drug schedules listing methamphetamine). It is undisputed Petitioner was convicted of possession of a controlled substance. Pet. at 16; Resp. at 2; Doc. 1-3 at 2 (ICE's Encounter Summary); Doc. 8-2 at 2 (ICE Officer O'Hara's Declaration). Further, Petitioner does not claim he is a protected witness in a criminal investigation, which would entitle him to release despite his status as a "criminal alien." *See* 8 U.S.C. § 1226(c)(4) (allowing for the release of certain protected witnesses who would otherwise be subject to mandatory detention under this subsection).

Thus, § 1226(c) governs and Petitioner is subject to statutory mandatory detention. *See Jennings*, 583 U.S. at 305-06 (concluding "§ 1226(c) mandates detention of any alien

falling within its scope and that detention may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes").

### B. Petitioner's prolonged detention violates due process, and the proper remedy is a bond hearing.

Petitioner alleges his detention is so prolonged that it violates his rights to due process. Pet. at 7-8, 20-21.[2] "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings. At the same time, however, [the Supreme] Court has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (citation modified). In *Demore*, a noncitizen subject to § 1226(c) mandatory detention claimed his detention "violated due process because [the predecessor to ICE] had made no determination that he posed either a danger to society or a flight risk." *Id.* at 514. The Supreme Court held that detention of noncitizens "during removal proceedings is a constitutionally permissible part of [the removal] process." *Id.* at 531.

*Demore* "rejected facial challenges to mandatory detention under § 1226(c)." *Hernandez v. Mullin*, No. CIV-26-475-R, 2026 WL 1625669, at *1 (W.D. Okla. June 5, 2026); *id.* at *2 (collecting cases); *see also Sosa v. Greene*, 68 F. App'x 901, 902 (10th Cir. 2003) (applying *Demore* to a facial challenge in this circuit). But "noncitizens detained under § 1226(c) may, in some circumstances," still "bring as-applied Due Process challenges to their prolonged detentions." *Hernandez*, 2026 WL 1625669, at *2; *see also*

[2] Respondents largely do not address Petitioner's prolonged detention claim.

*Robollar v. Warden*, No. CIV-26-2048-D, 2026 WL 3322842, at *2 (W.D. Okla. Nov. 3, 2026) ("The Court is persuaded by the reasoning of the courts that found noncitizens detained under § 1226(c) may, in some circumstances, bring as-applied Due Process challenges to their prolonged detentions without being provided a bond hearing.").

As a threshold matter, Petitioner's procedural due process claim should be denied. For a procedural due process analysis, "whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950) (citation modified); *see also Rolia v. Mullin*, No. CIV-26-423-R, 2026 WL 1833993, at *1 (W.D. Okla. June 25, 2026) (concluding in the § 1226(a) context that "the process Petitioner is due is the process provided by that statute"). Because, as discussed above, § 1226(c) mandates detention without the opportunity for a bond hearing, Petitioner's ongoing detention does not violate his procedural due process rights.

With respect to substantive due process, however, neither the Supreme Court nor the Tenth Circuit has provided guidance explaining when a noncitizen's mandatory detention under § 1226(c) becomes unconstitutional. Similarly, this Court has not yet addressed whether prolonged detention without a bond hearing under § 1226(c) violates substantive due process. The undersigned finds the reasoning of Judge Russell in recent cases considering this issue to be persuasive.

In *Jalloh v. Garland*, Judge Russell held that to consider whether a noncitizen's detention has become so prolonged under § 1226(c), the court must consider six factors:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

No. CIV-22-908-R, 2023 WL 3021514, at *2-3 (W.D. Okla. Mar. 9, 2023) ("*Jalloh I*"). (citation modified).[3] Ultimately, Judge Russell concluded these factors weighed in favor of finding a due process violation and ordered the Government to provide the noncitizen with a bond hearing. *Jalloh v. Garland*, No. CIV-22-908-R, 2023 WL 3690252, at *3 (W.D. Okla. May 26, 2023) ("*Jalloh III*") (adopting 2023 WL 3690259 (W.D. Okla. Apr. 26, 2023) (R&R) ("*Jalloh II*")); *see also Robollar*, 2026 WL 3322842, at *3 (applying the *Singh* factors to a petitioner's challenge to his prolonged detention under § 1226(c)); *Chiwocha v. Figueroa*, No. CIV-26-1189-R, 2026 WL 2569498, at *4-6 (W.D. Okla. Aug. 31, 2026) (R&R) (applying the *Singh* factors in a § 1226(c) substantive due process analysis), *adopted* 2026 WL 2790122 (W.D. Okla. Sep. 17, 2026); *Smith v. Barr*, 444 F. Supp. 3d 1289, 1301-04 (N.D. Okla. 2020) (same).[4]

---

[3] These are sometimes referred to as the "*Singh* factors" due to *Singh v. Choate*—the first time they were used within the Tenth Circuit. No. 19-cv-909, 2019 WL 3943960, at *5 (D. Colo. Aug. 21, 2019).

[4] Recently Judge Russell adopted Judge Mitchell's recommendation to evaluate a prolonged detention claim by a noncitizen detained under § 1226(c) using the factors in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *Hernandez v. Mullin*, No. CIV-26-475-R, 2026 WL 1625669, at *2-3 (W.D. Okla. June 5, 2026) (adopting in part 2026 WL 1245748, at *4-5 (W.D. Okla. May 6, 2026) (R&R)). Judge Russell explained that while "*Mathews* generally applies in the context of procedural rather than substantive due process," it can be applied to substantive due process claims brought by noncitizens detained under § 1226(c). 2026 WL 1625669, at *2-3 (citation modified). Additionally, Judge Mitchell

The undersigned finds the six-factor test that Judge Russell applied in *Jalloh* appropriate for determining whether Petitioner's detention under § 1226(c) is constitutionally unreasonable and considers each factor in turn.

**1. Total length of detention to date.**

Petitioner has been in immigration detention since May 5, 2025, which currently amounts to more than 18 months of continuous detention. Pet. at 16; Doc. 1-3 at 2. In cases where petitioners were detained for similar periods of time, courts in this Circuit have concluded the length-of-detention factor supports finding a due process violation. *See, e.g.*, *Hernandez*, 2026 WL 1245748, at *3 (holding by Judge Russell that a bond hearing was

---

recently considered a due process claim of prolonged detention by a noncitizen detained under § 1226(c) in *Lopez Pizarro v. Gantt.* No. CIV-26-362-SLP, 2026 WL 2029042, at *3 (W.D. Okla. June 12, 2026) (R&R), *adopted*, 2026 WL 2023599 (W.D. Okla. July 13, 2026). In evaluating whether the petitioner's detention was so prolonged as to be constitutionally unreasonable, Judge Mitchell relied on a three-factor test used in *Lopez v. Garland*, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022). *Lopez Pizarro*, 2026 WL 2029042, at *3. That test considers "the total length of detention to date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government." *Id.* (quoting *Lopez*, 631 F. Supp. 3d at 879). Applying those factors, Judge Mitchell concluded the petitioner had failed to establish his seven-month detention was so prolonged as to violate due process. *Id.* at *4.

Here, both parties appear to agree *Mathews* controls without addressing the six-factor test used by Judge Russell in *Jalloh* or the three-factor test used by Judge Mitchell in *Lopez Pizarro*. *See* Pet. at 19-20 (asserting the *Mathews* factors for his procedural due process claim); Resp. at 7-9 (asserting the *Mathews* factors do not apply but arguing they favor Respondents if the Court does apply them). The undersigned is persuaded that the *Singh* factors are more instructive than the *Mathews* factors for evaluating the constitutionality of a petitioner's prolonged detention under § 1226(c). *See Khasanova v. Rokosky*, No. CV-26-763, 2026 WL 1815723, at *6 (D. Ariz. June 24, 2026) (comparing the relative uses and advantages of the *Singh*, *Lopez*, and *Mathews* tests). However, if the Court declines to apply the *Singh* factors and instead applies the three-factor test Judge Mitchell used in *Lopez Pizarro*, those factors also weigh in favor of finding Petitioner's ongoing detention is constitutionally unreasonable.

required for a noncitizen detained under § 1226(c) "for more than six months" when analyzing substantive due process under *Mathews*); *Vital v. Baltasar*, No. 26-CV-01625, 2026 WL 1965075, at *4 (D. Colo. July 7, 2026) (finding 18-month detention under § 1226(c) and § 1231(a) weighs in petitioner's favor); *Vizguerra-Ramirez v. Baltazar*, No. 25-cv-881, 2025 WL 3653158, at *11 (D. Colo. Dec. 17, 2025) (finding § 1231(a)(6) detention of nine months weighed in the petitioner's favor); *Jalloh II*, 2023 WL 3690259, at *4 (finding an 18-month § 1226(c) detention "weighs heavily in Petitioner's favor"); *Sheikh v. Choate*, No. 22-cv-1627, 2022 WL 17075894, at *3 (D. Colo. Jan. 27, 2022) (concluding § 1226(c) detention of "nearly 13 months" weighed in the petitioner's favor); *see also Michelin v. Warden Moshannon Valley Corr. Ctr.*, 169 F.4th 418, 433-34 (3d Cir. 2026) (explaining § 1226(c) detention "becomes more and more suspect after five months" and, in most cases, will become "unreasonable sometime between six months and one year after it began" (citation modified)). Thus, the first factor weighs in Petitioner's favor.

**2. Likely duration of future detention.**

The next factor is the likely duration of Petitioner's future detention. "Courts examine the anticipated duration of all removal proceedings—including administrative and judicial appeals—when estimating how long detention will last." *Jalloh II*, 2023 WL 3690259, at *5 (citation modified).

While an IJ has ordered Petitioner removed, he appealed that decision on September 26, 2025. *See* Pet. at 16; Doc. 1-6 at 2. The BIA appeal has been pending for more than 13 months. "Petitioner's appeal to the BIA and, if unsuccessful there, to the Tenth Circuit Court of Appeals, could take years." *Mardanpour v. Warden*, No. 26-cv-550, 2026 WL

963164, at *6 (D.N.M. Apr. 9, 2026) (holding § 1225(b) detention violated substantive due process without applying the *Singh* factors); *see also Ali X v. Bondi*, No. 26-cv-1367, 2026 WL 1857825, at *5 (D. Colo. June 29, 2026) ("Although DHS's appeal remains pending before the [BIA], no decision has yet been issued. Thus, Petitioner's [§ 1225(b)] detention may continue for a substantial and presently indeterminate period"); *Vizguerra-Ramirez*, 2025 WL 3653158, at *12 (noting "courts have consistently declined to 'hold [a petitioner's] efforts to seek relief through the available legal channels against [him]"); *Chairez-Castrejon v. Bible*, 188 F. Supp. 3d 1221, 1229 (D. Utah 2016) ("An alien who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the law makes available to him." (citation modified)). And even if Petitioner's order of removal becomes final, there is no guarantee he will be quickly removed. *See Singh*, 2026 WL 39493960, at *6 (calculating the likely duration of future detention for a noncitizen at a similar stage of immigration proceedings). Thus, this factor weighs in Petitioner's favor.

**3. Conditions of detention.**

The next factor considers "whether the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention." *Jalloh II*, 2023 WL 3690259, at *5 (citation omitted). "The more that the conditions under which the alien is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Id.* (citation omitted).

Petitioner alleges he is "held under conditions that resemble those used for maximum-security criminal prisoners." Doc. 1-7 at 8; *see also id.* at 8-10 (alleging

conditions at detention facility). Further, he is detained at Diamondback Correctional Facility, which ICE describes as a "jail." *Diamondback Correctional Facility: Sending Items to Detainees*, U.S. Immigration & Customs Enforcement, https://www.ice.gov/detain/detention-facilities/diamondback-correctional-facility (last visited Nov. 12, 2026); *see also Robollar*, 2026 WL 3322842, at *3 ("There is no indication that the conditions of confinement at the Diamondback Correctional Facility differ from a penal institution. The facility was previously operated as a prison").

Where a noncitizen is "confined in a secure detention facility and is subject to significant restraints on his liberty," his confinement "is akin to criminal incarceration." *Ali X*, 2026 WL 1857825, at *5; *see also Viruel Arias v. Choate*, No. 22-CV-02238, 2022 WL 4467245, at *2 (D. Colo. Sep. 26, 2022) (finding this factor favors petitioner where "the conditions of her detention are poor and exacerbated by her health complications" and even though she received mental health services while in detention, it was "insufficient . . . to explain how the conditions of [petitioner's] confinement differ from the conditions of penal confinement"). This factor also weighs in Petitioner's favor.

**4. Delays in the removal proceedings caused by Petitioner.**

The next factor is whether Petitioner has delayed the removal proceedings against him. "In considering delays in the removal proceedings caused by the detainee, courts should be sensitive to the possibility that dilatory tactics by the removable alien may serve not only to put off the final day of deportation, but also to compel a determination that the alien must be released because of the length of his incarceration." *Jalloh II*, 2023 WL 3690259, at *5 (citation modified). However, a noncitizen's mere exercise of his legal

rights cannot weigh against him; instead, courts look for evidence of "bad faith or obstructive conduct." *Mbalivoto v. Holt*, 527 F. Supp. 3d 838, 851 (E.D. Va. Aug. 11, 2020) (applying a three-factor test to § 1225(b) detention); *see also German Santos v. Warden Pike County Correctional Facility*, 965 F.3d 203, 212 (3d Cir. 2020) ("We will not hold [petitioner's] appeals and applications for discretionary relief against him."); *Jalloh II*, 2023 WL 3690259, at *5 (same). As such, this factor is neutral. *See Ali X*, 2026 WL 1857825, at *5 (finding this factor "neutral" where any delay in the petitioner's removal proceedings was not attributable to him).

**5. Delays in the removal proceedings caused by the government.**

Next, the Court must consider whether any delays in the removal proceedings were caused by the Government. Petitioner does not allege the Government delayed his immigration proceedings by, for example, rescheduling hearings. Nor is there any evidence of "lack of diligence or bad faith" by Respondents in the record. *Mbalivoto*, 527 F. Supp. 3d at 851. This factor is also neutral.

**6. Likelihood that removal proceedings will result in a final order of removal.**

Finally, the Court must consider whether, at the end of his removal proceedings, Petitioner will be removed. "The more likely that the alien will be removed, the longer the detention that will be deemed reasonable." *Vizguerra-Ramirez*, 2025 WL 3653158, at *12 (citation modified). In evaluating this factor, courts consider the extent to which the petitioner or the government has prevailed in Immigration Court. *See Ali X*, 2026 WL 1857825, at *6 ("An Immigration Judge has already determined, following merits

proceedings, that Petitioner qualifies for asylum. Although DHS may ultimately prevail on appeal, Petitioner presently possesses a favorable ruling from an Immigration Judge, and no final order of removal exists."); *Mbalivoto*, 527 F. Supp. 3d at 851 ("The BIA previously remanded an adverse determination of his eligibility to stay in the United States; and at this point, after one round of appeals, Petitioner has prevailed on the merits of his claims before the Immigration Judge. In sum, Petitioner's ultimate success on his application appears increasingly likely; and this factor weighs in favor of granting Petitioner relief.").

Here, an IJ has issued an order of removal against Petitioner. While he has appealed that order to the BIA, there is no evidence in the record to suggest that appeal is likely to succeed. Accordingly, this factor weighs against Petitioner.

**7. Conclusion**

In weighing these six factors, the undersigned finds Petitioner's continued detention of more than 18 months without an individualized bond hearing has become unreasonable in violation of his due process rights. Notably, in *Jalloh III*, Judge Russell found a violation of the petitioner's due process rights after determining the first three factors weighed in favor of the petitioner, factors four and five were neutral, and the sixth factor weighed against the petitioner. 2023 WL 3690252, at *2. In similar circumstances to Petitioner's case, Judge Russell found it relevant in *Jalloh III* that the petitioner had "been detained for approximately 19 months in a criminal correctional facility and that it may be several more months before all appeals are exhausted." *Id.*; *accord Robollar*, 2026 WL 3322842, at *4 (holding "Petitioner's continued detention requires an individualized bond hearing before

an immigration judge to comport with due process" where "the first, second, and third factors favor Petitioner, the fifth factor favors Respondents, and the fourth and sixth factors are neutral"); *de Zarate v. Choate*, No. 23-CV-571, 2023 WL 2574370, at *5 (D. Colo. Mar. 20, 2023) (finding, for a petitioner detained for more than 14 months under § 1226(c), that even when "factors one, two, and three weigh in favor of [petitioner]; factors four and five are neutral; and factor six weighs against [him]," the factors "when considered together" favored petitioner and a finding that her due process rights were violated (citation modified)).

Where a noncitizen has been detained for an unconstitutional length of time in violation of due process, as Petitioner has, he is entitled to an individualized bond hearing. *See Jalloh III*, 2023 WL 3690252, at *2-3 (ordering a bond hearing for a noncitizen subject to unconstitutional prolonged mandatory detention). The Court should order Respondents to provide him with an individualized bond hearing before a neutral IJ.[5]

**C. The Court should decline to address Petitioner's remaining claims.**

To the extent Petitioner alleges additional violations of the INA, ICE regulations, or due process, *see* Pet. at 7-8, 17-20, if the Court grants habeas relief to Petitioner with a

[5] Petitioner seeks "his immediate release under reasonable conditions of supervision" or "an individualized custody hearing within five (5) days." Pet. at 8. While some courts have ordered release as a remedy in immigration habeas matters involving detention under § 1226(c) and substantive due process, *see Deborne v. Warden*, No. 26-cv-1657, 2026 WL 1694566, at *3 (D.N.M. June 11, 2026), the undersigned concludes a bond hearing is the appropriate remedy here. Further, Judges in this District consistently have declined to order burden shifting at any hearing, and the undersigned declines to recommend burden shifting here. *See, e.g.*, *Sow v. Cerna*, No. CIV-26-1376-G, 2026 WL 2302462, at *2 (W.D. Okla. Aug. 10, 2026) (declining to address a petitioner's burden-shifting claim).

recommended bond hearing, the Court should decline to decide the merits of his remaining claims based on his detention. *See, e.g.*, *He v. Blanche*, No. CIV-26-1435-G, 2026 WL 2296120, at *2 (W.D. Okla. Aug. 10, 2026) (declining to decide a petitioner's additional due process claim when adopting the recommended relief of a bond hearing under § 1226(a)).

## V. <u>Recommendation and Notice of Right to Object</u>

For these reasons, the undersigned recommends that the Court **GRANT in part** the Petition for habeas relief by ordering Respondents to provide Petitioner with a bond hearing within seven days or otherwise release Petitioner if he has not received a lawful bond hearing within that period. Adoption of this Report and Recommendation would moot Petitioner's pending Application for an Order to Show Cause, Doc. 2.

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed not later than **November 19, 2026**. *See id.* § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party wishes to respond to the other party's objections, such response must be filed not later than **November 24, 2026**. *See* Fed. R. Civ. P. 72(b)(2). Failure to object timely waives the right to appellate review of the factual and legal issues addressed in this Report and Recommendation. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this matter.

**ENTERED** this 12th day of November, 2026.

Chris M. Stephens

CHRIS M. STEPHENS
UNITED STATES MAGISTRATE JUDGE